UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| GRAND HERITAGE HOTEL GROUP, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 04-528T |
| | : | |
| VICTOR H. MILLS, | : | |
| Defendant. | : | |

**GRAND HERITAGE HOTEL GROUP, LLC'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Grand Heritage Hotel Group, LLC, moves pursuant to Fed. R. Civ. P. 56 and Loc. R. 56 for summary judgment. As set forth in more detail in its supporting memorandum, Plaintiff seeks, with respect to Count I of its complaint, a declaration that it has not breached an agreement with Defendant and that it terminated Defendant's employment for just cause. Plaintiff also seeks summary judgment, with respect to Count II of its complaint, which alleges that Defendant breached the covenant of good faith and fair dealing implicit in his agreement with Plaintiff.

Additionally, Plaintiff seeks summary judgment on Defendant's five counterclaim counts. Those counts allege breach of employment contract, false representations, unlawful termination, breach of good faith and fair dealing, and abuse of process.

In support of its motion, Plaintiff submits herewith (1) Memorandum of Law in Support of Plaintiff's Motion For Summary Judgment and (2) Plaintiff's Loc. R. 56(a) Statement of Undisputed Facts.

P131190.1

GRAND HERITAGE HOTEL GROUP, LLC

By its attorneys,

Andrew B. Prescott (#3758)
Stacie Boeniger Collier (#6059)
Nixon Peabody LLP
One Citizens Plaza, Suite 500
Providence, RI 02903
(401) 454-1000
(401) 454-1030 (facsimile)
apresscott@nixonpeabody.com
sbcollier@nixonpeabody.com

Of counsel:

Jonathan W. Greenbaum, Esq.
NIXON PEABODY LLP
401 9th Street, N.W.
Suite 900
Washington, DC 20004-2128
(202) 585-8000
(202) 585-8080 (facsimile)
jgreenbaum@nixonpeabody.com
Counsel for Plaintiff
Grand Heritage Hotel Group, LLC

Dated: March 17, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Grand Heritage Hotel Group, LLC's Motion for Summary Judgment was served via first class mail, on this 17th day of March, 2006 upon:

Melody A. Alger, Esq.
Baluch, Gianfrancesco, Mathieu & Szerlag
155 South Main Street, Suite 101
Providence, RI 02903

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| GRAND HERITAGE HOTEL GROUP, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 04-528T |
| | : | |
| VICTOR H. MILLS, | : | |
| Defendant. | : | |

**GRAND HERITAGE HOTEL GROUP, LLC'S
MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS


I. DESCRIPTION OF MOTION ....1

II. FACTS ....2

III. ISSUES ....6

IV. POINTS AND AUTHORITIES ....7

A. Mr. Mills's Violation of Grand Heritage's Employment Policies, Including the Harassment and Standards of Appearance Policies, Allowed Grand Heritage to Terminate Mr. Mills's Employment for "Cause." ....7

B. Mr. Mills's Non-Disclosure of His Prior Sexual Harassment Issues and Disregard of Grand Heritage's Policies, Inappropriate Conduct, and Non-Performance Breached the Covenant of Good Faith and Fair Dealing. ....8

C. Defendant Cannot Demonstrate That Grand Heritage Knowingly Made False Statements and Intended to Deceive Him Regarding the Phantom Equity Plan or Anything Else. ....10

D. Rhode Island Does Not Recognize a Cause of Action for "Wrongful Termination." ....11

E. Mr. Mills Cannot Prove That Grand Heritage Did Anything That Amounts to a Breach of the Covenant of Good Faith and Fair Dealing. ....12

F. Grand Heritage's Filing of this Declaratory Judgment Action After Mr. Mills Alleged Breach of Contract and Subsequent Maintenance of the Action for the Sole Purpose of Resolving the Parties' Dispute. ....12

V. CONCLUSION ....14

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

GRAND HERITAGE HOTEL GROUP, LLC, :
:
Plaintiff, :
v. : C.A. No. 04-528T
:
VICTOR H. MILLS, :
Defendant. :

**GRAND HERITAGE HOTEL GROUP, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

I. DESCRIPTION OF MOTION

Plaintiff, Grand Heritage Hotel Group, LLC ("Grand Heritage"), seeks summary judgment under Rule 56(a) on both counts of its complaint. Count I (Declaratory Judgment) seeks a declaration and decree that it has not breached an agreement with Defendant, Victor H. Mills ("Mills" or "Mr. Mills") and that it terminated Defendant's employment for cause. Count II alleges that Defendant breached the covenant of good faith and fair dealing implicit in his agreement with Plaintiff.

Plaintiff also seeks summary judgment under Rule 56(b) on Counts I through V of Defendant's counterclaim. Count I alleges that Grand Heritage breached its employment contract with Defendant. Count II alleges that Grand Heritage made false representations to Defendant. Count III alleges that Grand Heritage unlawfully terminated Mr. Mills; that his termination involved a "willful and conscious scheme to unlawfully terminate him." Count IV alleges that Grand Heritage breached the covenant of good faith and fair dealing in the course of terminating Mr. Mills' employment. Count V alleges that Grand Heritage's complaint constitutes an abuse of process.

## II. FACTS

A synopsis of some of the facts relevant to this motion is as follows:[1]

Grand Heritage, which owns and operates the Biltmore Hotel, hired Victor Mills as the General Manager of the Biltmore Hotel in June, 2004. (Plaintiff's Local Rule 56 Statement of Undisputed Facts at ¶ 12, Tab B.)[2] Mr. Mills executed Grand Heritage's June 23, 2004 written offer of employment on June 24, 2004. (Statement at ¶ 13, Tab B.) The offer letter included the following terms, among others:

> 1. Employment. You shall be employed by Grand Heritage as Vice President – Operations East. Your employment shall commence as soon as practical after acceptance of this offer. As Vice President, Operations-East, you will be expected to follow the Employee Manual and the Company's policies then in effect and as modified from time to time . . . .
>
> 2. Initial Term. The initial term of your employment shall be for a period of two (2) years from the commencement of your employment. After the initial term, you shall become an employee at-will . . . .
>
> 3. Termination. During the initial term, your employment can be terminated at any time, and without notice, for "cause." Cause shall defined as (a) the continued failure (including incapacity to perform your duties) by you to perform your duties; (b) failure to meet goals and targets as specified by the Company; (c) any act of fraud, misappropriation, dishonesty, embezzlement or similar conduct against the Company, including its hotels . . . . After the initial term, either you or the Hotel can terminate your employment at any time for any reason.
>
> 8. Profit Sharing Plan. You will be eligible to participate in a Grand Heritage Phantom Equity Plan which shall be determined by the Grand Heritage Board of Directors.
>
> 11. Entire Offer. This letter constitutes our entire offer regarding the terms and conditions of your prospective employment. By accepting the terms herein, you acknowledge that this offer supersedes any and all prior agreements and understandings between you and the Company, including its predecessors and affiliated companies. (Statement at ¶¶ 12-13, Tab B.)

---

[1] A complete statement of the material facts is set forth in Grand Heritage Hotel Group, LLC's Local Rule 56 Statement of Undisputed Facts.

[2] Hereinafter cited to as "Statement at ¶ ___" or "Statement at ¶ __, Tab ___" if applicable.

Grand Heritage spent a lot of time and effort on Mr. Mills' recruitment. During his recruitment, Mr. Mills made no mention of his colorful past at the Peabody Hotel Group ("Peabody"). (Statement at ¶ 6.) Unbeknownst to Grand Heritage when it extended an offer to Mr. Mills, he had been the subject of multiple investigations while employed by the Peabody. (Statement at ¶¶ 7-8.) The investigations concerned allegations of inappropriate conduct at a general manager/sales meeting in 1995. A Peabody employee by the name of Abby Shapiro had alleged that Victor had tried to kiss her at the Peabody Orlando Hotel and that he had made advances to two other sales managers. The findings included (1) that his conduct in Orlando had been inappropriate and that he must apologize to the three women; (2) that his management style was inappropriate and had the potential to make some women feel uncomfortable; and (3) that he must publicly apologize to his management staff and should receive counseling. The conduct was deemed serious enough that Peabody told Victor that another complaint would lead to his termination. (Statement at ¶¶ 7 and 9.)

In 2001, Mr. Mills again needed to be counseled about inappropriate conduct. A Peabody coaching and counseling interview form reflects that Peabody received a report that he was engaging in conduct towards Denise Evans, a Peabody secretary, which included "hugging, putting his arms around, and kissing [her] cheek." He was also reported to have kissed other female associates and made inappropriate conduct." As a result of the reports, Peabody warned Mr. Mills that he must stop immediately all "hugging, kissing, or any other touching other than a professional handshake" and to end all flirtatious language – verbal and or body language." Again, he was admonished that further problems could result in disciplinary action including termination. (Statement at ¶¶ 8 and 9.)

If Grand Heritage had known about Mr. Mills's record at Peabody, it would not have hired him. (Statement at ¶ 11.) But because Grand Heritage did not know, it allowed Mr. Mills to begin employment at the Biltmore pursuant to the terms of the offer letter on about June 28, 2004. Mr. Mills executed and agreed to follow the Chesapeake[3] House Rules which provided, among other things, that he understood that he could be immediately discharged if he violated certain rules. (Statement at ¶ 16, Tabs C-E.) One of the rules was "the Hotel's policy on Non-Harassment in the work place." The House Rules explained that the harassment prohibition covered harassment against a fellow employee because of sex. (Statement at Tab D.) Mr. Mills also signed the Policy Statement Regarding Sexual Harassment which expressly included as examples of harassment:

- ❖ Unwanted sexual advances
- ❖ Visual conducts such as leering, making sexual gestures, displaying of sexually suggestive objects, pictures, cartoons, or posters
- ❖ Verbal conducts such as making or using derogatory comments, epithets, slurs and jokes
- ❖ Verbal sexual advances or oppositions
- ❖ Verbal abuse of a sexual nature such as graphic verbal commentaries about an individual's body . . . .
- ❖ Physical conduct such as touch . . . .

(Statement at Tab C.)

Victor Mills signed the employee acknowledgment on the Harassment Policy. The acknowledgment stated that he had "read and familiarized [himself] with the contents, and . . . [understood his] responsibility for adhering to this policy." He agreed in writing to "abide by the above Company Policy Statement." (Statement at Tab C.)

Mills signed the employee acknowledgment on "The Chesapeake Look, Standards of Appearance" policy in June 2004. (Statement at Tab E.) By signing the policy, Mills agreed to abide by the policy which specifically states acceptable attire as being:

---

3 Chesapeake was the name of the prior hotel company in which Mr. Cullen was a principal and the Chesapeake rules were thus used by Grand Heritage.

a. Suits or blazers and slacks in conservative solid colors, tweed or pin stripes, or sports jackets in neutral shades with slacks. Suit jacket/blazers are required when in public areas.

b. Collared white, conservative-colored or pin striped dress shirts must be worn with conservative ties at all times.

c. Conservative dress socks which match the color and style of pants must always be worn. (Statement at Tab E.)

In addition, by reading and signing the "Standards of Appearance" policy Mills was aware that "failure to follow these guidelines will be cause for disciplinary action and/or dismissal from employment…" (Statement at Tab E.)

Despite acknowledging in the offer letter to follow Grand Heritage policy and signing the workplace harassment policy and standards of appearance policy, Mr. Mills did not behave as required. In early December, 2004, a Hotel employee, Autumn Neugent, reported an incident in which she personally observed Mr. Mills act contrary to the policy against harassing "visual conduct such as leering" and inappropriate remarks. She saw Mr. Mills observe a female employee walking down the hallway. He stepped out of the office to watch her, and then exclaimed "Wow" after the employee was out of sight. In the same day, according to Ms. Neugent, he twice more got up to leer at the same employee as she walked down the hallway. (Statement at ¶¶ 26 and 33, Tabs A and G.)

Ms. Neugent also complained at the same time that she had observed Mr. Mills on two separate occasions walk up behind two employees and hug them and kiss them on the back of their heads. (Statement at ¶ 33, Tabs A and G.) She described the behavior as "unprofessional and very embarrassing to at least one of the individuals." (Statement at Tab G.) When Mike Mason, the Vice President – People, learned about the complaint, he conducted an investigation. His investigation and findings are detailed in his declaration. In sum, in addition to the "Wow" incident employees reported the following behaviors and others by Mr. Mills:

- Greeting Hotel and wedding parties in his bicycle shorts (Statement at ¶¶ 19 and 23, Tab A.)
- Telling Lauren Nyzio in front of two other employees that he would spank her (Statement at ¶ 30.)
- Remarking to Nyzio while taking a customer complaint that the guest "must be having oral sex in the shower" (Statement at ¶ 30, Tab A.)
- Kissing or being overly touchy-feely with employees (Statement at ¶¶ 30-35, 37, Tabs A, F, and G.)
- Making inappropriate, unwelcome and unwanted advances to employees (Statement at ¶¶ 26, 29-30, 32-35, 37-39, Tabs A, F, and G.)
- Leering at Lauren Nyzio (Statement at ¶¶ 29 and 38, Tab A.)

Mr. Mason understandably concluded based upon the evidence that Mr. Mills had created a sexually hostile work environment. (Statement at ¶ 40.) The investigation also revealed that the Hotel staff did not respect Mr. Mills. For example, Victor Terry, the head of security, reported that Mr. Mills frequently missed the morning management meeting and had come to be known around the Hotel as "Country Club Victor." (Statement at ¶¶ 22 and 24, Tab A.) Accordingly, Mason, and John Cullen, President of Grand Heritage, decided to terminate Mr. Mills's employment immediately for cause.

## III. ISSUES

A. Whether Mr. Mills' Violation of Grand Heritage's Employment Policies, including the Harassment and Standards of Appearance Polices, Amount to "Cause" for Termination of Mr. Mills' Employment?

B. Whether Mr. Mills' Failure to Disclose His Prior Sexual Harassment Issues and His Blatant Disregard of Grand Heritage's Policies, Inappropriate Conduct, and Non-Performance Breached the Covenant of Good Faith and Fair Dealing?

C. Whether the Court should Grant Summary Judgment to Grand Heritage on Defendant's False Representation Claim Because He Cannot Demonstrate that Grand Heritage Knowingly Made False Statements and Intended to Deceive Him Regarding the Phantom Equity Plan or Anything Else?

D. Whether the Court should Grant Summary Judgment to Grand Heritage on Mr. Mills' Unlawful Termination Claim because Rhode Island does not Recognize such a Claim?

E. Whether the Court should Grant Summary Judgment to Grand Heritage on Mr. Mills' Breach of Covenant and Fair Dealing Claim because Mr. Mills has Insufficient Evidence to Withstand Summary Judgment?

F. Whether the Court should Grant Summary Judgment to Grand Heritage on Mr. Mills' Abuse of Process Claim because Grand Heritage Filed this Action in Good Faith for a Determination of the Parties' Legal Rights after Mr. Mills Asserted Grand Heritage had Breached the Parties' Agreement?

## IV. POINTS AND AUTHORITIES

### A. Mr. Mills's Violation of Grand Heritage's Employment Policies, Including the Harassment and Standards of Appearance Policies, Allowed Grand Heritage to Terminate Mr. Mills's Employment for "Cause."

In unequivocal terms, the offer letter stipulated that Mr. Mills would be expected to follow the Company's policies and procedures. (Statement at ¶ 13, Tab B.) Mr. Mills blatantly disregarded the policies, particularly the harassment policy, by repeatedly leering at, kissing, touching, and speaking to employees in a way prohibited by the policies. Grand Heritage cannot be expected to have continued to employ a general manager of Mr. Mills' ilk.

The offer letter permitted Grand Heritage to terminate Mr. Mills' employment "at any time, and without notice, for 'cause.'" (Statement at ¶ 13, Tab B.) The letter defined "cause" as including the continued failure to perform his duties. It could not be clearer that the offer letter imposed a duty on Mr. Mills to follow the policies. Equally clear is his continued failure to follow the policies.

In other ways, Mr. Mills also failed to perform his duties and thus gave cause for his termination. He failed to attend required morning management meetings. (Statement at ¶ 22.) In disregard of the standards of appearance and common sense, he paraded about in his Spandex

biking clothes; wearing them in his office, public areas of the hotel; and even interacting with Hotel guests and potential customers so attired. (Statement at ¶¶ 19 and 23.) Generally, Mr. Mills's behavior was so below what everyone at the Hotel expected that he lost all credibility and became little more than a joke. A General Manager who becomes known as Country Club Victor, has certainly failed to perform his duties in a highly obvious way. (Statement at ¶¶ 21 and 24.)

B. Mr. Mills's Non-Disclosure of His Prior Sexual Harassment Issues and Disregard of Grand Heritage's Policies, Inappropriate Conduct, and Non-Performance Breached the Covenant of Good Faith and Fair Dealing.

Rhode Island law recognizes in "virtually every contract" an implied covenant good faith and fair dealing." Crellin Tech., Inc. v. Equipmentlease Corp., 18 F.3d 1, 10 (1st Cir. 1994); see Dovenmuehle Mortgage, Inc. v. Antonelli, 790 A.2d 1113, 1115 (R.I. 2002). The implied covenant exists "so that the contractual objectives may be achieved." Id. (quoting Ide Farm & Stable, Inc. v. Cardi, 110 R.I. 735, 297 A.2d 643, 645 (1972)). In this case, Mr. Mills's conduct violated the covenant in a way that thwarted Grand Heritage's objective to hire and employ and general manager fit for the job.

Mr. Mills first violated the covenant of good faith in his failure to disclose his record of being investigated and counseled for sexual harassment. (Statement at ¶¶ 6-10.) He could not sign the Grand Heritage policy in good faith and accept the offer of employment without disclosing his record. Grand Heritage had a right to know that the person to be put in charge of its employees at the Hotel had a record of inappropriate conduct.

Mr. Mills cannot disprove that his former employer, the Peabody, had to deal with numerous instances of inappropriate conduct by Mr. Mills. (Statement at ¶¶ 6-8.) Peabody forced him to make private and public apologies for his behavior. (Statement at ¶ 7.) Peabody

created significant documentation regarding how it dealt with Mr. Mills' misdeeds as General Manager ("GM"). (Statement at ¶¶ 6-9.) Mr. Mills has and will seek to minimize his conduct by claiming lack of memory about what happened or by minimizing what he did, but the contemporaneous documentation created by Peabody tells the story.

Michael Mason, Grand Heritage's head human resources officer, states without hesitation that had Grand Heritage known about the Peabody issues, Grand Heritage would never had hired Mr. Mills. (Statement at ¶ 11, Tab A.) Mr. Mills had to have known that too and thus kept it all a secret. It is manifest bad faith to hide from a prospective hotel employer information that a hotel professional would know to be highly relevant information.

Once on board, Mr. Mills's bad faith in performing, or failing to perform, his agreement was painfully obvious to many Hotel employees. A GM who alternates between conspicuously absent and conspicuously inappropriate, cannot be said to be performing in good faith. A couple of paragraphs from Erin Connors' [4] declaration provide the best example of how Mr. Mills's behavior negated the contractual objectives:

> 6. We had conversations about Victor and referred to him as "creepy," sketchy" and "weird." I believe that he created a sexually hostile work environment at the Hotel for female employees. I would not feel comfortable being alone with him in the office. I believe that most female sales employees felt the same way.
>
> 8. It did not appear to me, and my co-workers, that Mr. Mills took his job as General Manager seriously. He was often absent from the office, and as a result of his demeanor and lack of seriousness, no one took him seriously. When I went to Mr. Mills with issues or problems related to groups in the hotel or bookings, he just didn't deal with it, and seemed to ignore the issues. It was as if we had no General Manager when he was there.
> (Statement at ¶ 32, Tab F.)

[4] Mr. Mills came up behind Ms. Connors and kissed her on the back of her head. He routinely put his arm around her. She did not welcome his conduct.

C. Defendant Cannot Demonstrate That Grand Heritage Knowingly Made False Statements and Intended to Deceive Him Regarding the Phantom Equity Plan or Anything Else.

Mr. Mills alleges that "certain representations, including but not limited to the claim that Mr. Mills was eligible to participate in a Phantom Equity Plan ("Plan") were false and known by Grand Heritage to be false when such representations were made." (Defendant's Answer to Plaintiff's Counterclaim, February 3, 2004, Def.'s Countercl. ¶ 31.)[5] Mr. Mills does not allege what in particular was false about the Phantom Equity Plan representations or what shows that Grand Heritage knew its representations to be false. Similarly, Mr. Mills suggests that representations about other things were knowingly false but he fails to assert any facts to illuminate this shadowy claim.

Mr. Mills bears the burden of proving that Grand Heritage made a statement that it knew to be false and that Grand Heritage intended to deceive Mr. Mills. Francis v. Am. Bankers Life Assurance Co. of Florida, 861 A.2d 1040, 1046 (R.I. 2004). In this summary judgment context, Mr. Mills needs to come forward with evidence demonstrating that there is indeed a trial worthy issue on this claim. See R. R. Isla Verde Hotel Corp. v. Howard Johnson Int'l, Inc., 2005 U.S. App. LEXIS 1234 (1st Cir. Jan. 25, 2005) (quoting Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Grand Heritage assumes that Mr. Mills intends to claim that Grand Heritage's statement about the Plan in the offer letter was knowingly false and intented to deceive. The offer letter only stated, "You will be eligible to participate in a Grand Heritage Phantom Equity Plan which shall be determined by the Grand Heritage Board of Directors." (Statement at Tab B ¶ 8.)

The offer letter, an integrated document which "superseded any and all prior agreements and understandings," did not represent that there was an existing Plan at the time of the offer.

---

[5] Hereinafter cited to "Def.'s Countercl. ¶ __."

(Statement at Tab B ¶ 11.) Nor did the offer letter make any particular promises about when he would participate or what the value of such participation would be. In fact, the offer letter at least suggested that all of this was at the discretion of the Grand Heritage Board of Directors. (Statement at Tab B ¶ 8.)

Perhaps Mr. Mills intends to rest his fraudulent misrepresentation claim on post-hire statements about the Plan (or some other aspect of his employment for that matter). If so, it will be interesting indeed to see how he tries to prove the required detrimental reliance. Mr. Mills obviously did not rely on post-hire statements in deciding to come to the Biltmore. So the detrimental reliance must be something else. Grand Heritage seriously doubts that there is anything else.

D. Rhode Island Does Not Recognize a Cause of Action for "Wrongful Termination."

Mr. Mills's wrongful termination count lacks legal basis and is entirely superfluous. The First Circuit Court of Appeals and this Court have repeatedly noted that Rhode Island has not recognized a cause of action for wrongful discharge. Andrade v. Jamestown Hous. Auth., 82 F.3d 1179 (1st Cir. 1996)(citing Pacheco v. Raytheon Co., 623 A.2d 464, 465 (R.I. 1993)); Brainard v. Imperial Mfg. Co., 571 F. Supp. 37 (D. R.I. 1983)(rejecting suggestion that wrongful termination was actionable under Rhode Island law). In light of the above, Mr. Mills's factual allegations regarding his wrongful termination need no specific answer.

Both Grand Heritage and Mr. Mills have placed squarely before the Court the question of whether Grand Heritage had the legal right to terminate Mr. Mills and avoid paying his salary and benefits for the balance of the two year term. Both sides have also asserted that the other breached the covenant of good faith and fair dealing. The necessary territory has thus been covered and the legally non-existent wrongful termination claim can be left behind.

E. Mr. Mills Cannot Prove That Grand Heritage Did Anything That Amounts to a Breach of the Covenant of Good Faith and Fair Dealing.

In Count IV, Mr. Mills incorporates the entire universe of his previous allegations and then asserts broadly that "Grand Heritage's conduct, including but not limited to, its conduct surrounding the termination of Mr. Mills' employment constitutes a violation of the covenant of good faith and fair dealing." (Def.'s Counterclaim ¶ 48.) Although the exact contours of Mr. Mills' claim remain unclear, the ultimate lack of merit in the claim could not be clearer.

Mr. Mills cannot create a genuine issue of material fact regarding the following basic facts: Mr. Mills was the subject of harassment complaints at the Peabody and was warned by that employer that his continued inappropriate behavior would lead to further discipline or discharge. (Statement at ¶ 9.) Mr. Mills secured employment with Grand Heritage without disclosing the complaints or the disposition thereof to Grand Heritage. (Statement at ¶ 6.) At the Biltmore, Grand Heritage conducted an investigation, as the law requires, into a complaint that he had violated Grand Heritage's policy against harassment. (Statement at ¶ 28.) Multiple employees provided information to Grand Heritage that led Grand Heritage to conclude that he had violated the policy and lost the credibility necessary to continue as a manager. (Statement at ¶ 41.) Grand Heritage then fired him. (Statement at ¶ 42.) That firing cannot possibly be a breach of the covenant of good faith and fair dealing. If it is, employers are between a large rock and a particularly hard place.

F. Grand Heritage's Filing of this Declaratory Judgment Action After Mr. Mills Alleged Breach of Contract and Subsequent Maintenance of the Action for the Sole Purpose of Resolving the Parties' Dispute.

By letter dated December 7, 2004, Mr. Mills's attorney, Melody Alger, sent a two page letter to Mr. Mason at Grand Heritage. The letter stated, in part, as follows:

> Grand Heritage is in breach of its employment contract with Victor Mills. Its conduct, both before and during the termination process, is violative of the covenant of good faith and fair dealing . . . . Moreover, if it is discovered that Grand Heritage has manufactured an investigation into misconduct to attempt to justify its early termination, or attempt to circumvent payment of sums due under the contract, this pretextual discharge may expose Grand Heritage to punitive as well as compensatory damages.
>
> I am hereby demanding that Grand Heritage buy out Mr. Mills (sic) contract, for the two year period, less those sum he has already received. Additionally, Mr. Mills is seeking reasonable relocation expenses, the $40,000 real estate deposit if he is required to forfeit the same, and those sums he was assured under the "Phantom Equity Plan."
> (Statement at ¶ 44.)

In direct response to Ms. Alger's letter, Grand Heritage filed this action. In order to prove abuse of process, Plaintiff must show not only that Grand Heritage sued him (otherwise every suit would be abuse of process), but also that Grand Heritage used the suit "for an ulterior or wrongful purpose that the proceedings were not designed to accomplish." Butera v. Boucher, 798 A.2d 340, 353 (R.I. 2002). Abuse of process "arises when a legal proceeding, although set in motion in proper form, becomes perverted to accomplish an ulterior or wrongful purpose for which it was not designed." Id. (quoting Clyne v. Doyle, 740 A.2d 781, 783 (R.I. 1999). "The regular use of process cannot constitute abuse of process even though the person using it was actuated by a wrongful motive, purpose, intent or malice." Miner v. Commerce Oil Ref. Corp., 198 F. Supp. 887, 891 (D.R.I. 1961).

It is insufficient for Mr. Mills to allege that Grand Heritage sued him "solely to harass, annoy, humiliate, embarrass and otherwise damage Mills." (Def.'s Counterclaim, ¶ 50.) In order to survive summary judgment, he needs to bring forth proof of actual use of the suit for a wrongful end. Grand Heritage denies filing this suit out of spite. But in any event, showing "pure spite" as a motive is insufficient, where as here, the suit has been "used only to accomplish the result for which it was created." Butera, 798 A.2d at 354.

V. CONCLUSION

For the reasons set forth above, Grand Heritage respectfully requests that this Court grant its Motion for Summary Judgment and award judgment for Grand Heritage on both counts of its Complaint and against Mr. Mills on all counts of his Counterclaim.

GRAND HERITAGE HOTEL GROUP, LLC

By its attorneys,

Andrew B. Prescott (#3758)
Stacie Boeniger Collier (#6059)
Nixon Peabody LLP
One Citizens Plaza, Suite 500
Providence, RI 02903
(401) 454-1000
(401) 454-1030 (facsimile)
aprescott@nixonpeabody.com
scollier@nixonpeabody.com

Of counsel:

Jonathan W. Greenbaum, Esq.
NIXON PEABODY LLP
401 9th Street, N.W.
Suite 900
Washington, DC 20004-2128
(202) 585-8000
(202) 585-8080 (facsimile)
jgreenbaum@nixonpeabody.com
Counsel for Plaintiff
Grand Heritage Hotel Group, LLC

Dated: March 17, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Grand Heritage Hotel Group, LLC's Memorandum of Law in Support of its Motion for Summary Judgment was served via first class mail, on this 17th day of March, 2006 upon:

Melody A. Alger, Esq.
Baluch, Gianfrancesco, Mathieu & Szerlag
155 South Main Street, Suite 101
Providence, RI 02903

Nancy R. Mahoney