UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| GRAND HERITAGE HOTEL GROUP, LLC, Plaintiff, | : | |
| v. | : | C.A. No. 04-528T |
| VICTOR H. MILLS, Defendant. | : | |

**GRAND HERITAGE HOTEL GROUP, LLC'S**
**LOCAL RULE 56 STATEMENT OF UNDISPUTED FACTS**

Pursuant to Loc. R. 56, Plaintiff, Grand Heritage Hotel Group, LLC ("Grand Heritage"), hereby provides its statement of undisputed facts in support of its motion for summary judgment.

**Parties**

1. Plaintiff, Grand Heritage, is a Delaware Limited Liability Company with a principal place of business in Portland, Oregon. (Defendant's Answer to Plaintiff's Complaint and Counterclaims, February 3, 2004, Def.'s Answer ¶ 2.)[1]

2. Plaintiff, though subsidiaries, affiliates and related companies, is a hotel ownership and management company that operates The Biltmore Hotel in Providence, Rhode Island. (Def.'s Answer ¶ 3.)

3. Defendant, Victor H. Mills ("Mills"), is an individual who, on information and belief is currently domiciled outside the State of Rhode Island. (Def.'s Answer ¶ 4.)

**Mills' Background and Recruitment By Grand Heritage**

4. Michael J. Mason ("Mason"), Vice President - People at Grand Heritage, was personally involved in the recruitment of Mills to be Vice President of Operations-East Coast for

[1] Hereafter referred to as "Def.'s Answer ¶___" or "Def.'s Countercl. ¶ ___" which ever is applicable.

Grand Heritage. (Declaration of Michael J. Mason[2], November 16, 2005, ¶¶ 1-3 at Tab A; Deposition of Victor H. Mills[3], November 2, 2005, p. 39, ln. 1-10, p. 40, ln. 7-8.)

5. During the interview process with Mills, Grand Heritage inquired as to Mills' background and his prior work experiences, as well as his employment record. (Mason Decl. ¶ 5 at Tab A.)

6. At no time during the interview process did Mills inform Grand Heritage that he had received warnings and reprimands from his former employer, Peabody Hotel Group ("Peabody"), regarding his discriminatory treatment towards female employees. (Mason Decl. ¶ 6 at Tab A; Mills Depo. Ex. 37.)

7. In 1995, Peabody conducted an investigation into inappropriate conduct by Mills at a general manager/sales meeting. Peabody's investigative findings were reviewed with Mills. Mills testified that he was counseled by Peabody, that his personality and management style needed to change. Specifically, Mills was counseled to "reel in" his tendency to be "touchy and feely." Peabody told Mills "not to inappropriately touch a female" and recommended strongly that he seek counseling. Mills was required to make an apology. (Mills Depo. p. 195-196, ln. 24-4, P. 196, ln. 19-25, p. 200, ln. 6-11, pp. 200, ln. 20-22, pp. 200--201, ln 24-3, pp. 202-203, ln. 23-7, Ex. 37; Deposition of Merilyn G. Mangum[3], January 30, 2006, p. 30, ln. 14-21, p. 31, ln. 3-5, pp. 33-34, ln. 14-11, Ex. 1.)

---

[2] Hereinafter cited to as "Mason Decl. ¶ ___ at Tab A." True and accurate copies of cited pages are attached hereto at Tab A.

[3] Hereinafter cited to as "Mills Depo. p. __, ln. __" and "Mangum Depo. p. __, ln. __." Due to page restrictions, Plaintiff has not attached Mills' deposition transcript pages and other documents (e.g., declarations) cited in the Statement of Undisputed Facts. Plaintiff has sought leave to file exhibits in excess of the Court's page limitations and will supply the documents if the Court grants the Motion.

8. On October 23, 2001, in response to a complaint against Mills, Mills signed a written warning issued by Merilyn Mangum, Peabody Vice President and General Counsel. (Mills Depo. Ex. 37; Mangum Depo. p. 45, ln. 14-18, p. 49, ln. 11-16, Ex. 1, p. 19.)

9. Peabody management told Mills several times that he would be terminated immediately if they received further complaints. (Mills Depo. p. 205, ln. 5-13, Ex. 37; Mangum Depo. p. 36, ln. 11-15, Ex. 1, pp. 10 & 19.)

10. Mills' record with Peabody shows a pattern of harassing behavior toward female employees and warnings, as well as counseling against engaging in harassing behavior in the workplace. (Mason Decl. ¶ 6 at Tab A.)

11. If Grand Heritage had known about Mills' prior record with Peabody, Grand Heritage would not have considered him for employment. (Mason Decl. ¶ 7 at Tab A.)

**Employment Agreement and Policies**

12. On June 23, 2004, Grand Heritage offered, in writing, Defendant the position of Vice President, Operations-East to be based in Providence, Rhode Island at The Biltmore Hotel ("The Biltmore" or "Hotel"). (Def.'s Countercl. ¶ 23, Ex. A at Tab B[4]; Mills Depo. pp. 50-51, ln. 20-22, Ex.1; Mason Decl. ¶ 9 at Tab A.)

13. The written offer contained terms and conditions of employment and stated that Defendant "was expected to follow the Employee Manual and Company's policies and procedures then in effect and as modified from time to time by the Company." The offer also contained an initial term of two (2) years. During the initial term, Defendant's employment could be "terminated at any time, and without notice for 'cause'." (Def.'s Countercl. Ex. A ¶¶1-3 at Tab B; Mills Depo. p. 50-51, ln. 20-22, Ex. 1.)

---

[4] A true and accurate copy of Def.'s Countercl. Ex. A is attached hereto as Tab B.

14. Mills accepted the offer (Def.'s Answer ¶ 10) on June 24, 2004 and commenced work at The Biltmore shortly thereafter. (Mason Decl. ¶ 10 at Tab A; Mills Depo. pp. 52-53, ln. 21-6, Ex. 1.)

15. From on or about June 28, 2004 to December 7, 2004, Defendant's employment was based at the The Biltmore, where he served as the General Manager ("GM"). (Def.'s Answer ¶ 11.)

16. At or near the commencement of his employment, Defendant received Plaintiff's employment policies which included a sexual harassment policy, "house rules" and standards of appearance or "attire policy." Defendant signed an acknowledgement that he received such policies. (Mason Decl. ¶ 16 at Tab A; Mills Depo. p. 109-110, ln. 7-20, Exs. 6, 3, 7 at Tabs C-E.)[5]

17. By signing the offer letter and Grand Heritage employment policies, including the sexual harassment policy and the standards of appearance policy, Mills agreed to follow these policies. (Mason Decl. ¶ 16 at Tab A.)

**<u>Standards of Appearance and Employees' Perception of Mills</u>**

18. The Biltmore/Grand Heritage dress policy applicable to executives requires a suit and tie while performing hotel duties. (Mason Decl. ¶ 26 at Tab A; Mills Depo. Ex. 7 at Tab E; Deposition of Lauren Nyzio, December 7, 2005, p. 18, ln. 14-15; Declaration of Scott Connery, February 3, 2006, ¶ 10; Declaration of Victor Terry, February 2, 2006, ¶ 6.[6])

19. Mills appeared in the public areas of the hotel, including the main lobby, and the Hotel Starbucks, in bike shorts and attire. (Mason Decl. ¶¶ 18, 22, 26, 30 & 34 at Tab A;

---

5 True and accurate copies of Mills' Depo. Exs. 6, 3, 7 are attached hereto at Tab C, D, and E, respectively.

6 Hereinafter cited to as "Nyzio Depo. p. ___," "Connery Decl. ¶ ____," and "Terry Decl. ¶ ___." See footnote 3.

Connery Decl. ¶ 9; Terry Decl. ¶ 6; Nyzio Depo. p. 27, ln. 1-4; 46, ln 11-13; Declaration of Brenda McKain, February 1, 2006, ¶ 9.)[7]

20. Mills' attire violated Hotel policy. (Mason Decl. ¶ 18 at Tab A.)

21. To many Biltmore employees, Mills did not appear to take his job seriously and was, as a result, not taken seriously. (Connery Decl. ¶ 8; Terry Decl. ¶ 5; Declaration of Erin Connors, February 6, 2006, ¶ 8 at Tab F.)[8]

22. Mills missed many of the 9:00 a.m. management meetings that he was supposed to lead, instead opting to ride his bike. (Mason Decl. ¶ 22 at Tab A; Terry Decl. ¶ 5.)

23. Scott Connery ("Connery"), the Director of Catering at the Biltmore, encountered Mills in the elevator wearing a Spandex biking outfit and sweating profusely. A bride-to-be and her mother were in the elevator with Connery because Connery was showing them the Biltmore facilities. Mills introduced himself to the two women as the GM and attempted to shake their hands. To Connery, the mother seemed mortified by Mills' appearance and behavior. (Connery Decl. ¶ 9.)

24. Mills was not respected by the staff. Staff nicknamed him "country club Victor [Mills]." (Mason Decl. ¶ 22 at Tab A; Nyzio Depo. pp. 63-64, ln. 23-8.) The overnight security guard nicknamed Mills "bicycle boy." (Mason Decl. ¶ 22 at Tab A.)

25. The Biltmore staff thought Mills was a "freak" and that he was "'creepy,' 'sketchy,' and 'weird'." (Mason Decl. ¶ 28 at Tab A; Connors Decl. ¶ 6 at Tab F; Declaration of Tessa Greene, February 3, 2006, ¶ 4.)[9] Mills' harassing behavior made staff feel "creepy" and

---

7 Hereinafter cited to as "McKain Decl. ¶ ___." See footnote 3.

8 Hereinafter cited to as "Connors Decl. ¶ ___ at Tab F." A true and accurate copy of Conners Decl. is attached hereto at Tab F.

9 Hereinafter cited to as "Greene Decl. ¶ ___." See footnote 3.

uncomfortable. (Mason Decl. ¶¶ 28-29 & 32 at Tab A; McKain Decl. ¶¶ 5-7.) Mills was described as a "pig." (Mason Decl. ¶ 28 at Tab A.)

**Harassment Investigation and Findings**

26. On December 3, 2004, Grand Heritage received a complaint from Autumn Neugent ("Neugent"), a reservations employee, against Mills. (Mason Decl. ¶ 19 , Ex. 4 at Tabs A and G[10].) The complaint accused Mills of creating a hostile work environment. (Declaration of Denice Garcia ¶ 5[11]; Mason Decl. 19, Ex. 4 at Tabs A and G; Nyzio Depo. pp. 40-41, ln 6-10, p. 43, ln. 16-17; p. 44, ln. 8-11; p.45, ln. 6-8.) Specifically, the complaint alleged that Mills left his office when a female employee walked by and stared at her and said "wow." (Garcia Decl. ¶ 5; Mason Decl. ¶ 19, Ex. 4 at Tabs A and G; Nyzio Depo. p. 40, ln. 6-17.) Neugent also reported that Mills left his office in the same manner on two more occasions that day to stare at the female employee. (Mason Decl. ¶ 19, Ex. 4 at Tabs A and G; Nyzio Depo. p. 40, ln. 6-17.) Neugent's report also includes details of Mills' inappropriate contact with other female employees. (Mason Decl. ¶ 19, Ex. 4 at Tabs A and G; Nyzio Depo. p. 40, ln. 6-16.) Ms. Neugent made her complaint to Lauren Nyzio "(Nyzio"), the Hotel Human Resources Director. (Nyzio depo. p. 40, ln. 6-17; Garcia Decl. ¶ 7; Nyzio Depo. pp. 69-71, ln. 11-9; p. 71, ln. 12-18.)

27. Denise Garcia ("Garcia"), Director of Revenue Management, witnessed Neugent's reaction to Mills' conduct during the "wow" incident. (Garcia Decl. ¶ 5.)

---

10 A true and accurate copy of Mason Decl. Ex. 4 is attached hereto at Tab G.

11 Hereinafter cited to as "Garcia Decl. ¶ ____." See footnote 3.

28. On December 6, 2004, Mason conducted an investigation by interviewing the employee who initiated the harassment complaint, as well as other members of Hotel management. (Mason Decl. ¶ 21 at Tab A.)

29. Mason interviewed Victor Terry ("Terry"). Terry informed Mason that on two occasions, Nyzio, the Hotel's human resource manager complained to him in conference about inappropriate behavior and comments of a sexual nature by Mills toward her. (Mason Decl. ¶ 22 at Tab A; Terry Decl. ¶ 4.)

30. Mason interviewed Nyzio. Nyzio had an office adjacent to Mills. At the time, Nyzio was a new human resources manager who was promoted from an administrative assistant job. (Mills Depo. p. 130, ln. 12-16; p. 131, ln. 1-6.) Nyzio first told Mason that in front of two Hotel employees, Mills told her that he would "spank her." (Declaration of Felix Santana, February 3, 2006[12], ¶ 4; Nyzio Depo. p. 52, ln. 3-22; p. 53, ln. 16-17; Mills Depo. p. 182, ln. 2-9.) Nyzio further stated that Mills was overly "touchy feely" with her and that Mills would grope her in front of other employees. Nyzio reported that one time when a hotel guest called Mills to complain about his room, Mills put the caller on mute and told Nyzio that the guest "must be having oral sex in the shower." (Mason Decl. ¶ 23 at Tab A.)

31. Nyzio stated that she received a complaint from Neugent that Mills had created a sexually hostile work environment. Nyzio told her to put her complaint in writing, which she did. Nyzio also wrote a memo outlining some of the concerns she had with Mills. (Mason Decl. ¶ 24 at Tab A.)

---

12 Hereinafter cited to as "Santana Decl. ¶ ___." See footnote 3.

32. Mason interviewed Erin Connors ("Connors"), who is a sales assistant. Connors told Mason that Mills placed his arm around her which made her feel uncomfortable. Sometime in the Fall of 2004, Mills kissed Connors on the back of the head. This occurred in the workplace and Connor told Mason that it was unwelcome. Connors stated that she would not feel comfortable in the office alone with Mills. Connors also heard and witnessed Mills making sexually inappropriate comments to Nyzio and heard inappropriate comments to other staff. (Mason Decl. ¶ 27 at Tab A; Connors Decl. ¶¶ 3-6 at Tab F.)

33. Mason interviewed Neugent, who made a written complaint of a hostile work environment against Mills. She said that she observed Mills during work hours pay a lot of attention to the female employees in sales; he kissed them on their heads which made her (and other female employees) feel uncomfortable. Neugent also witnessed Mills kiss an employee named Connie and engaged in other inappropriate conduct. The occurrence which led Neugent to write a complaint was that she observed Mills on three occasions exclaim "wow" when Stephanie walked past him and he looked at her in a sexual way. This made Neugent feel uncomfortable. (Mason Decl. ¶ 28, Ex. 4 at Tabs A and G.)

34. Mason talked to Brenda McKain ("McKain") from accounting. McKain told Mason that she observed Mills putting his arms around Nyzio on numerous occasions and even in her office. McKain observed Mills hug and kiss Connors. At an off property bar, Blake's, McKain observed Mills "moving closer to Erin [Connors]" and heard Mills comment "I wish I weren't married." McKain also stated that the bookkeeper from McCormick & Schmicks, Tessa Greene stated to her that Mills made her feel "uncomfortable." (Mason Decl. ¶ 29 at Tab A; McKain Decl. ¶¶ 4-7.)

35. Mason interviewed Tessa Greene ("Greene"), the bookkeeper from McCormick & Schmicks, the restaurant located in the Biltmore Hotel. Greene stated that Mills is "touchy and feely" with her (i.e., patting her on the back), and she has told him not to do that. (Greene Decl. ¶ 3; Mason Decl. ¶ 30 at Tab A.) Greene said that a former server from McCormick's complained about Mills' unprofessional behavior. (Greene Decl. ¶ 5; Mason Decl. ¶ 30 at Tab A.)

36. Mason interviewed Stephanie Doran from sales. Stephanie told Mason that Mills makes comments and does things that can be construed as harassment, such as comments on how females look. Stephanie stated that another employee told her that Mills makes her uncomfortable in the office. (Mason Decl. ¶ 31 at Tab A.)

37. Mason interviewed Connie Holland, a hotel sales employee. She informed Mason that she experienced unwanted physical touching from Mills. He has kissed her and put his arms around her in the office. These were unwanted and unwelcome advances. He grabbed her from behind. Holland stated that she wouldn't feel comfortable with Mills alone. (Mason Decl. ¶ 32 at Tab A.)

38. Mason interviewed Connery. Connery stated that during Mills' first few weeks on property, Nyzio came to him in confidence complaining about Mills' behavior toward her and how to handle it. Connery observed Mills acting inappropriately toward Nyzio, including inappropriate comments and staring down her shirt. Connery also told Mason that he observed Mills putting his hand around Kerri Quinn Jaffy ("Jaffy"). (Connery Decl. ¶¶ 5-6; Mason Decl. ¶ 33 at Tab A.)

39. Mason interviewed Pat Coleman ("Coleman"), the Hotel's Chief Engineer. Coleman informed Mason that a gentleman named Rick from Berman Construction, a contractor

working at the Hotel, informed him that he had observed Mills talking inappropriately toward hotel guests. The comment he could recall Mills saying was that the guest "was not bad for an old woman," referring to her body. Coleman told me he observed Mills looking at Nyzio inappropriately. (Mason Decl. ¶ 34 at Tab A.)

40. After these interviews, Mason concluded that Mills had created a hostile work environment, in violation of the Company's policies and in violation of his agreement with the Company to abide by the policies. The consistency of the accounts and the clear creation of a hostile work environment led Mason to conclude that it was unnecessary to interview Mills. (Mason Decl. ¶ 35 at Tab A.)

41. Mason decided that Mills could not remain on the job as he had already clearly created a hostile work environment and had lost all credibility with this management staff. In Mason's view, Mills had lost the ability to do his job. (Mason Decl. ¶ 36 at Tab A.)

42. Mason and John Cullen, the President of Grand Heritage, made the decision to terminate Mills' employment immediately for cause, and in accordance with the agreement with him. They feared that keeping him on the property could expose the Company to continued liability. (Mason Decl. ¶ 37 at Tab A.)

43. On Monday, December 6, 2004, Plaintiff placed Defendant on suspension pending the outcome of the investigation. (Def.'s Answer ¶ 17.)

44. On December 7, 2004, Mills' attorney, Melody Alger, sent a two-page letter to Mason alleging that Grand Heritage had breached its contract with Mills.[13]

13 See footnote 3.

GRAND HERITAGE HOTEL GROUP, LLC

By its attorneys,

Andrew B. Prescott (#3758)
Stacie Boeniger Collier (#6059)
Nixon Peabody LLP
One Citizens Plaza, Suite 500
Providence, RI 02903
(401) 454-1000
(401) 454-1030 (facsimile)
apresscott@nixonpeabody.com
sbcollier@nixonpeabody.com

Of counsel:
Jonathan W. Greenbaum, Esq.
NIXON PEABODY LLP
401 9th Street, N.W.
Suite 900
Washington, DC 20004-2128
(202) 585-8000
(202) 585-8080 (facsimile)
jgreenbaum@nixonpeabody.com
Counsel for Plaintiff
Grand Heritage Hotel Group, LLC

Dated: March 17, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Grand Heritage Hotel Group, LLC's Local Rule 56 Statement of Undisputed Facts was served via first-class mail, on this 17th day of March, 2006 upon:

Melody A. Alger, Esq.
Baluch, Gianfrancesco, Mathieu & Szerlag
155 South Main Street, Suite 101
Providence, RI 02903