UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

GRAND HERITAGE HOTEL GROUP, LLC
Plaintiff

Vs. C. A. NO.: 04-528T

VICTOR H. MILLS
Defendant

**DEFENDANT, VICTOR MILLS' RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS AND STATEMENT OF DISPUTED FACTS**

Plaintiff's Number 5: Although the defendant Mills admits that Grand Heritage inquired into his prior work history, and in fact hired an Executive Search Consultant to conduct confidential interviews to investigate Mr. Mills' thirteen year history with the Peabody Hotel Group. But Mr. Mills was never once asked by the plaintiff's officers or agents as to whether he had ever been disciplined or reprimanded in his career.

Plaintiff's Number 6: Defendant Mills denies that "he had received warnings and reprimands from his former employer … regarding his discriminatory treatment towards female employees." This "undisputed fact" refers the reader to Michael Mason's Declaration claiming that a Peabody employee did in fact file a EEOC charge against Mr. Mills for sexual harassment. In fact, the only EEOC claim ever made against Mr. Mills was brought by a 78 year old woman who claimed, after termination from employment, that she was discriminated against on the basis of her sex and retaliated against. The claim was dismissed summarily in that the EEOC was unable to conclude that the information obtained established violations of any statutes.

Plaintiff's Number 7: While it is admitted that Mr. Mills was counseled as to inappropriate behavior, Defendant Mills states that this was the result of a complaint which was brought by a woman who was not his employee regarding an off-site event in Orlando, Florida. In fact the only time that Mr. Mills was disciplined as a result of a complaint made by a female employee was in 2001 when one of Mr. Mills' 622 employees complained that Mr. Mills hugged, kissed the cheek and stroked the hair of a secretary named Denise Evans. Mills depositions page 209.

Plaintiff's Number 9: Denied. Mr. Mills' coaching and counseling interview conducted in response to the above complaint indicated that, if corrective steps were not achieved, immediate disciplinary action may include termination (emphasis added), which is standard language in all progressive discipline documents.

Plaintiff's Number 10: Mr. Mills' thirteen year record with Peabody was marked by excellence, as noted in the interviews conducted by the plaintiff's recruiter. He was counseled twice in this thirteen year history with the Peabody, only once as a result of a complaint made by a female employee. He was named "General Manager of the Year" twice during this period.

Plaintiff's Number 11: Grand Heritage cannot seriously content that two employee warnings issued to Mr. Mills during his entire career would have prevented it for hiring Mr. Mills. If so, the plaintiff, who claims to have spent an enormous amount of money recruiting Mr. Mills, should have asked Mr. Mills or any of the persons interviewed whether or not there were any instances of employee discipline in his past.

Plaintiff's Number 12: Admitted that Grand Heritage prepared a writing dated June 23, 2004, purporting to be the entire contract by and between the parties. Denied that this writing accurately and completely reflects the agreement between the parties.

Plaintiff's Number 13: See response to number 12. Additionally, termination for "cause" is defined and restricted by the terms of the agreement.

Plaintiff's Number 18: Denied that the Biltmore/Grand Heritage dress policy is applicable to executives. The dress policy, appended to the plaintiff's statement of undisputed facts at Tab E, refers to "Male Assoicates" (sic). Victor Mills was a manager not an associate. Additionally, it is undisputed that Victor Mills was a General Manager of the hotel and therefore had management discretion to review a uniformed or non-uniformed associate's attire. It is specifically stated in the dress policy that management reserves the right "to make a judgment as to whether [dress] is representative of Chesapeake Hotel Group's professionalism requirements". See Plaintiff's Statement of Undisputed Facts, Tab E. Dress guidelines are to be utilized with "sound management judgment." Id.

Plaintiff's Number 19: Defendant Mills admits that, as a resident of the Biltmore, he sometimes exited the building or used the fitness facilities in fitness garb. Mr. Mills exercised in the morning, prior to business hours, and on the weekends.

Plaintiff's Number 20: Denied.

Plaintiff's Number 21: Denied. Mr. Mills was constantly undermined by Grand Heritage Executives, who denigrated Mr. Mills to his employees and subordinates and encouraged subordinates to provide them with information about Mr. Mills behind his back. Lauren Nyzio's deposition pages 74, 79-81.

Plaintiff's Number 22: Denied.

Plaintiff's Number 23: Objection to the Director of Catering's interpretation of the perceived reaction of another person. It is admitted that Mr. Mills would leave the Biltmore, where he lived, in the mornings and on the weekends to ride his bicycle. In order to access his living quarters, Mr. Mills necessarily had to enter in and out of the Biltmore and use elevators and staircases.

Plaintiff's Number 24: To the extent that Mr. Mills was not respected, and the same is not admitted, Mr. Mills was constantly undermined by Grand Heritage Executives who encouraged disrespect.

Plaintiff's Number 25: Denied.

Plaintiff's Number 26: Denied. Neugent's Complaint is specious at best, describing only that she overheard Mr. Mills say the word "wow" when looking in the direction of another female employee who had already exited the hallway.. Mr. Mills has no recollection of uttering the word "wow" (Mills deposition page 90), although the issue is quite silly in that it fails to state a claim for sexual harassment or hostile work environment. Ms. Neugent could have no way of knowing what Mr. Mills was thinking when he uttered such a word, the word is inoffensive, the alleged inspiration for the word was not offended and made no complaint, and Ms. Neugent was subjected to no discriminatory treatment. Additionally, notwithstanding plaintiff's representation in paragraph 26, Ms. Neugent's complaint did not accuse Mr. Mills of "creating a hostile work environment" or staring at the female employee two more times on that day. Ms. Neugent's silly statement speaks for itself.

Plaintiff's Number 27: Ms. Mills cannot admit or deny this statement, but can hardly see how one employee's witnessing another employee's reaction to Mr. Mills saying the word "wow" could possibly be relevant or material.

Plaintiff's Number 28: Denied that an adequate investigation was conducted. Mr. Mason had planned to come to Providence to fire Mr. Mills prior to a "complaint" ever being made. Employees were encouraged to detail every criticism of Mr. Mills that they could think of even being requested to make an inventory of sundry complaints. See, for example, Nyzio Deposition Page 45, and Nyzio Transcript, Exhibit E.

Plaintiff's Number 29: Denied that there were any real interviews. Denied that Mr. Mason was interested in the allegation of Ms. Neugent. The notes of Victor Terry meeting making is clear that he was coached and contained impermissible hearsay. Although this "undisputed" fact reports comments of a sexual nature by Mills, the Terry notes reveal inappropriate conduct and obscene language by Terry, which was apparently allowed by Grand Heritage Management.

Plaintiff's Number 30: Denied that Mason had a true interview with Ms. Nyzio. Ms. Nyzio was advised to draft a litany of criticisms to justify Mr. Mills' termination. Ms. Nyzio was told prior to the "investigation" being conducted that Mr. Mills would be fired. Nyzio Deposition, Page 88. In fact, Ms. Nyzio, Mr. Mills' assistant, was in contact with Mr. Mason via her personal cell phone on weekends and off hours. Nyzio Deposition at page 89. Denied that Ms. Nyzio ever used the word grope. Denied that Ms. Nyzio was ever subjected to harassment, discrimination or inappropriate conversations with Mr. Mills, despite that Ms. Nyzio conducted herself in a manner to invite such conduct including making off color comments about dildoes during work. Nyzio Deposition, Pages 56, 57. In fact, Ms. Nyzio admitted that she was not offended by Mr. Mills conduct and that he was funny and made her laugh. Exhibit E to Nyzio's deposition.

Plaintiff's Number 31: Autum Neugent never complained that Mr. Mills created a sexually hostile work environment.

Plaintiff's Number 32: See response to number 28, above.

Plaintiff's Number 33: See response to number 28, above.

Plaintiff's Number 34: Denied, see response to number 28, above.

Plaintiff's Number 35: Denied, see response to number 28, above. Additionally, this "fact" should be stricken for hearsy.

Plaintiff's Number 39: Denied, should be stricken as hearsy.

Plaintiff's Number 40: Denied, that this was an actual investigation, denied that Grand Heritage believed that Mr. Mills had created a sexually hostile work environment, admitted that Mr. Mason never interviewed Mr. Mills.

Plaintiff's Number 41: Denied that Mr. Mason decided to terminate Mr. Mills after the "interviews". Ms. Nyzio had admitted that the decision was made before the investigation was conducted, and likely before Autum Neugent "complaint" was made.

Plaintiff's Number 43: Admitted that the defendant was on suspension on December 6, 2004.

Plaintiff's Number 44: Admitted.

Defendant,
VICTOR H. MILLS,

Melody A. Alger, Esquire #4585
Baluch, Gianfrancesco, Mathieu & Alger
155 South Main Street, Suite 101
Providence, RI 02903
Phone: 401-331-1434
Fax: 401-351-9653

**CERTIFICATION**

The undersigned hereby certifies that a copy of the within was mailed, postage prepaid, to:

Andrew B. Prescott, Esquire
Stacie Boeniger Collier
NIXON PEABODY LLP
One Citizens Plaza, 5th Floor
Providence, RI 02903

on this 31st day of ~~**March**;~~ 2006.